**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MOHAMED ALI SAMANTAR, | ) | Case No. 12-11085-BFK |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| BASHE ABDI YOUSUF, et al. | ) | |
| | ) | Adversary Proceeding |
| Plaintiffs, | ) | No. 12-01356-BFK |
| | ) | |
| vs. | ) | |
| | ) | |
| MOHAMED ALI SAMANTAR, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

The Plaintiffs in this action seek a declaration of non-dischargeability based upon a judgment entered by the U.S. District Court for the Eastern District of Virginia finding the Defendant liable for torture, indiscriminate killings and human rights abuses. Docket No. 1 (Complaint). The Plaintiffs are all former residents of Somalia, or in one case, the representative of decedents' estates for former residents of Somalia. *Id*. The Defendant, Mohamed Ali Samantar, served as the First Vice President and Minister of Defense for Somalia from 1980 to 1986, and as the Prime Minister from 1987 to 1990. *Id*. For the reasons stated below, the Court finds that the District Court's judgment is entitled to collateral estoppel. The Court will declare the District Court judgment to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

**Undisputed Facts**

The Court finds that the following facts are not genuinely in dispute.

*A. Background Facts.*

1.      Plaintiffs Bashe Abdi Yousuf, Buralle Salah Mohamoud, and Ahmed Jama Gulaid are former residents of Somalia. Plaintiff Aziz Mohamed Deria is the personal representative of the estates of Mohamed Deria Ali, Mustafa Mohamed Deria, Abdullahi Salah Mohamoud and Cawil Salah Mohamoud, who were also residents of Somalia.

2.      Defendant Mohamed Ali Samantar served as the First Vice President and Minister of Defense for Somalia from 1980 to 1986, and as the Prime Minister from 1987 to 1990.

3.      The Plaintiffs and the decedents all are or were members of the Isaaq clan in Somalia. The Issaq clan, some of whom were affiliated with a resistance organization known as the Somali National Movement ("SNM"), was targeted by the government of Major General Siad Barre. As found by District Judge Brinkema in her Opinion (discussed below), the Barre regime "tried to suppress the SNM through a violent military campaign, which included indiscriminate attacks on areas populated by Isaaq clan members, and it 'intentionally disregarded the distinction between civilians and SNM fighters.'" District Court Opinion (hereinafter, "Dist. Ct. Op."), at p. 7 (quoting the Plaintiffs' Second Amended Complaint).[1]

*B. The Initiation of the District Court Action and the Supreme Court's Decision on FSIA Immunity.*

4.      On November 10, 2004, the Plaintiffs brought an action against the Defendant in the U.S. District Court for the Eastern District of Virginia. Civil Action No. 1:04-cv-01360-LMB-JFA. The Plaintiffs' Second Amended Complaint asserted claims under the Alien Tort

---

[1] The District Court's Opinion is reported as *Yousuf v. Samantar*, No. 1:04-cv-1360-LMB-JFA, 2012 WL 3730617, at *1 (E.D. Va. Aug. 28, 2012).

Statute ("ATS"), 28 U.S.C. § 1350, and Alien Torture Victim Protection Act ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350 note). Dist. Ct. Op., p. 2.

5.      The Defendant initially defended the action on the ground that he was entitled to immunity under the Foreign Sovereign Immunities Act ("FSIA"). 28 U.S.C. § 1604. The District Court granted the Defendant's motion for summary judgment based on FSIA immunity. The Fourth Circuit reversed, and the Supreme Court granted certiorari. *Yousuf v. Samantar*, 552 F.3d 371 (4th Cir. 2009), *aff'd Samantar v. Yousuf*, 560 U.S. 305 (2010).

6.      In 2010, the Supreme Court affirmed the Fourth Circuit's opinion, holding 9-0 that the Defendant as an individual was not entitled to FSIA immunity. *Samantar v. Yousuf*, 560 U.S. 305, 325 (2010). The case was remanded to the District Court for further proceedings.

*C.  The Defendant's Claim of Common Law Immunity.*

7.      On remand, the Defendant asserted that he was entitled to common law immunity. The District Court rejected this defense on February 15, 2011. *Yousuf v. Samantar*, No. 1:04-cv-1360-LMB-JFA, 2011 WL 7445583, at *1 (E. D. Va. Feb. 15, 2011).

8.      The Defendant appealed the District Judge's common law immunity decision to the Fourth Circuit Court of Appeals. On November 2, 2012, the Fourth Circuit affirmed the District Court, holding that under a *jus cogens* theory of international law the Defendant was not entitled to immunity. *Yousuf v. Samantar,* 699 F.3d 763, 777 (4th Cir. 2012).[2]

---

[2] The Fourth Circuit held:
> A *jus cogens* norm, also known as a "peremptory norm of general international law," can be defined as "a norm accepted and recognized by the international community of States as a whole as a norm from which no derogation is permitted and which can be modified only by a subsequent norm of general international law having the same character." *Vienna Convention on the Law of Treaties* art. 53, May 23, 1969, 1155 U.N.T.S. 331; *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 714 (9th Cir.1992) (adopting same definition). Prohibitions against the acts involved in this case—torture, summary execution and prolonged arbitrary imprisonment—are among these universally agreed-upon norms.

9. The Defendant petitioned for a writ of certiorari with the Supreme Court. The Supreme Court denied the petition for a writ of certiorari on January 13, 2014. *Samantar v. Yousuf,* 134 S.Ct. 897 (2014).

*D. The Defendant files for Bankruptcy.*

10. In the meantime, while the Defendant's common law immunity claim was making its way to the Supreme Court, the case was scheduled for a trial in the District Court on February 21, 2012. This was a Tuesday, the day after President's Day, a federal holiday during which the federal courts were closed. On Sunday, February 19, 2012, the Defendant filed a voluntary bankruptcy petition under Chapter 7 with this Court. Case No. 12-11085-BFK, Docket No. 1.

11. The Plaintiffs filed an emergency motion for relief from the automatic stay in order to proceed with the trial in the District Court. *Id.* at Docket No. 4. The Court granted the Motion, finding that there was cause under Section 362(d)(1) of the Bankruptcy Code for immediate relief from the automatic stay so that the trial could proceed in the District Court. *Id.* at Docket No. 12. The Plaintiffs acknowledged that they would not be entitled to execute on any judgment that might be rendered by the District Court, without further relief from the automatic stay from this Court.

*E. The Trial Before the District Court.*

12. The case went to trial on February 23, 2012. Dist. Ct. Op. at pp. 4-5. On the morning of the trial, the Defendant appeared with counsel and advised the District Court that he would default and not defend the case on the merits. *Id.*, at p. 5. After inquiring whether the Defendant understood the consequences of his action (he did and so advised the Court), the District Judge held the Defendant in default. *Id.* The Court proceeded to hear evidence of the

---

699 F.3d, at 775.

Plaintiffs' damages without a jury (though, much of the evidence adduced supported a finding of liability as well as damages). *Id*., at pp. 5-6.

13. After hearing the evidence from the Plaintiffs, the Court took the matter under advisement. On August 28, 2012, the Court issued its Memorandum Opinion and Order. The District Court's Opinion held the Defendant to be in default and awarded a judgment in the amount of $21 million, consisting of $1 million in compensatory damages and $2 million in punitive damages for each of the three individual Plaintiffs and for the four represented estates. Case No. 1:04-cv-1360, Docket No. 366. The Court entered this judgment in a separate judgment Order. *Id*., at Docket No.367.

14. The District Court made numerous findings of fact in its Opinion. Notably, for purposes of this decision, the District Court found:

- "The Barre regime maintained its control over the population through its security and intelligence forces, including the Somali Armed Forces, of which defendant Mohamed Ali Samantar was commander during the relevant period." Dist. Ct. Op., p. 7.

- "The Barre regime tried to suppress the SNM through a violent military campaign, which included indiscriminate attacks on areas populated by Isaaq clan members and it 'intentionally disregarded the distinction between civilian and SNM fighters.'" *Id*.

- "The uncontested evidence supports imposing secondary liability. As First Vice President and Minister of Defense from January 1980 through December 1986, Samantar was the leader of the Somali Armed Forces and was the primary military figure in Barre's military regime." *Id*., at p. 28.

- The three elements of command responsibility were clearly met. *Id*., at 31.

- The allegations and the uncontested evidence also sufficiently established that the Defendant "'substantial[ly] assist[ed]' his subordinates with 'the purpose of facilitating'" the acts alleged in the Second Amended Complaint. *Id*., at p. 32.

- The Defendant's conduct was "'intentional, malicious, wanton and reckless,' justifying punitive damages." *Id*., at p. 36.

5

15. The Plaintiffs presented three theories of secondary liability: command responsibility, aiding and abetting liability, and joint criminal enterprise liability. *Id*., at p. 25. For command responsibility, three elements were required to be proved: (1) a superior-subordinate relationship between the military commander and persons who committed the abuses; (2) the defendant knew or should have known, in light of circumstances at the time, that the subordinates had committed, were committing or were about to commit human rights abuses; and (3) the defendant failed to take all reasonable and necessary measures to prevent human rights abuses and punish the abusers. *Id.,* at p. 26, citing *Chavez v. Carraznza*, 559 F.3d 486, 499 (6th Cir. 2009).[3]

16. For aiding and abetting liability, the Plaintiffs were required to prove: (1) that the Defendant provided practical assistance to the principal which had a substantial effect on the perpetration of the crime; and (2) that the Defendant did so with the purpose of facilitating commission of that crime. Dist. Ct. Op., p. 27, citing *Aziz v. Alcolac, Inc.,* 658 F.3d 388, 396 (4th Cir. 2011).

17. The District Court found liability based on the first two theories, command responsibility and aiding and abetting. Dist. Ct. Op., p. 31-32. It found it unnecessary to address joint criminal liability. *Id*., at p. 32, fn. 11.

18. The Defendant appealed to the Fourth Circuit, which affirmed the District Court's decision on February 3, 2014. *Samantar v. Yousuf*, Case No. 12-2178, Docket No. 52.

---

[3] The Supreme Court endorsed *Chavez's* theory of command responsibility in the case of *Mohamad v. Palestinian Authority*, 132 S.Ct. 1702, 1709 (2012) ("petitioners rightly note that the TVPA contemplates liability against officers who do not personally execute the torture or extrajudicial killing, see, e.g., C*havez v. Carranza,* 559 F.3d 486 (C.A.6 2009) . . . ")

19. The Defendant filed a petition for a writ of certiorari with the Supreme Court, on the ground that the Fourth Circuit's decision from November 2012 (699 F.3d 763) was interlocutory and that the Fourth Circuit's decision from February 2014, affirming the District Court's judgment, was now a final, appealable order. Petition for Writ of Certiorari, *Samantar v. Yousuf*, 135 S.Ct. 1528 (2015) (No. 13-1361), 2014 WL 1916750 at *12-13.

20. The Supreme Court denied the petition for certiorari on March 9, 2015. *Samantar*, 135 S.Ct. at 1528.

*F. The Plaintiffs' Motion for Summary Judgment.*

21. On May 29, 2015, the Plaintiffs filed their Motion for Summary Judgment in this Court. Docket Nos. 38, 39.

22. On July 13, 2015, the Defendant filed his Opposition to the Plaintiffs' Motion. Docket No. 45.

23. The Plaintiffs filed a Reply Memorandum. Docket No. 48.

24. The Court heard the arguments of the parties on August 18, 2015, at which time the Court took the Plaintiffs' Motion under advisement.

**Conclusions of Law**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts).

**I.    The Standard on Summary Judgment.**

The matter comes before the Court on the Plaintiffs' Motion for Summary Judgment. Summary judgment is appropriate where there is no genuine dispute as to any material fact, and

the moving party is entitled to judgment as a matter of law. Fed. R. Bank. P. 7056 (incorporating Fed. R. Civ. P. 56). The moving party has the initial burden of showing that there are no material facts in dispute, and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). When the moving party has met its initial burden, the burden then shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

Whether a fact is material or not depends on the substantive law at issue in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp*., 477 U.S. at 327 (citing Fed. R. Civ. P. 1).

## II.    Bankruptcy Code Section 523(a)(6).

Bankruptcy Code Section 523(a)(6) provides an exception to discharge for debts that are incurred as a result of willful and malicious injury. 11 U.S.C. § 523(a)(6). The Supreme Court has held that in order for a debt to be non-dischargeable under Section 523(a)(6), there must be "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). Relying on the Second Restatement of Torts, the Court held that the debtor must have intended "'the *consequences* of an act', not simply 'the act itself.'" *Id*., at 61–62 (citing Restatement (Second) of Torts, § 8A, cmt.

8

a, p. 15 (1964) (emphasis added)). Acts that are negligent or reckless do not suffice; a resulting injury must have been caused by "willful and malicious" conduct. *Id*., at 63-64 (citing *Davis v. Aetna Acceptance Co*., 293 U.S. 328, 332 (1934)).

The Fourth Circuit has held that the term "willful" means "'deliberate or intentional.'" *In re Stanley,* 66 F.3d 664, 667 (4th Cir. 1995) (quoting *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1009 (4th Cir.1985) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 365 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6320–21)). An injury may be found to be willful and malicious under § 523(a)(6) only if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result. *In re Parks*, 91 F. App'x 817, 819 (4th Cir. 2003); *In re Long*, 504 B.R. 424, 435–36 (Bankr. W.D. Va. 2014); *In re Trammell*, 388 B.R. 182, 186–87 (Bankr. E.D. Va. 2008) (noting that the Fourth Circuit has required "objective substantial certainty" or "subjective motive" in the debtor's intent to cause harm); *In re Owens*, 449 B.R. 239, 254–55 (Bankr. E.D. Va. 2011) (same).[4]

### III.    Res Judicata is Not Applicable.

The Plaintiffs first argue that the District Court judgment is res judicata of the claims in this adversary proceeding. Under res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. U.S.*, 440 U.S. 147, 153 (1979). "Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the

---

[4] The Supreme Court in *Geiger* relied on the Restatement (Second) of Torts, § 8A, for its formulation that the actor must have intended to cause the injury. *See Geiger*, 523 U.S. at 61. Section 8A states: The word "intent" is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, *or that he believes that the consequences are substantially certain to result from it.* Restatement (Second) of Torts, § 8A (emphasis added).

prior proceeding." *Brown v. Felson*, 442 U.S. 127, 131 (1979); *Chicot Cty. Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 378 (1940).

In *Brown v. Felson*, the plaintiff obtained a judgment by a stipulation entered into with the defendant. 442 U.S. at 128. The judgment did not specify the grounds on which the judgment was being entered. Shortly thereafter, the defendant filed for bankruptcy. *Id*. The plaintiff brought an action for a declaration of non-dischargeability as to his debt pursuant to Sections 17a(2) and 17a(4) of the Bankruptcy Act (fraud, deceit, and malicious conversion, respectively). *Id*., at 128-129. The bankruptcy court granted summary judgment to the defendant, holding that the State court judgment was res judicata of the plaintiff's claims. *Id*., at 130. The Tenth Circuit affirmed. *Id*. The Supreme Court reversed. *Id*., at 139. In its opinion, the Supreme Court noted that issues relating to a discharge "are irrelevant to the ordinary collection proceeding." *Id*., at 134. Further, applying res judicata in these circumstances would require plaintiffs to plead and litigate non-dischargeability issues in non-bankruptcy litigation ("In many cases, such litigation would prove, in the end, to have been entirely unnecessary, and it is not surprising that at least one state court has expressly refused to embroil itself in an advisory adjudication of this kind.") *Id*., at 135. For these reasons, the Court held that res judicata did not bar the plaintiff's claim for non-dischargeability in the bankruptcy court.[5] *Id*., at 138-39.

---

[5] There is a slight difference between *Brown v. Felson* and this case, in that in *Brown v. Felson,* the judgment was entered pre-petition, while in this case the judgment was entered post-petition. The Court finds this to be a distinction without a difference. The case went to trial only two days after the Defendant filed his bankruptcy petition. No one could have reasonably expected the Plaintiffs to have moved to amend their Complaint on the morning of the trial to include a new claim for non-dischargeability. The Defendant rightly would have claimed unfair surprise and prejudice and, had such a motion to amend been granted, the Defendant would have been entitled to a continuance in order to defend against the newly stated claim of non-dischargeability (which would have been counter to the reasons for which this Court granted the Plaintiffs immediate relief from the automatic stay in order to try their claims in the District Court, while all of the parties, their counsel and their translators were in Alexandria, Virginia, prepared to try the case).

In the case of *Pahlavi v. Ansari (In re Ansari),* 113 F.3d 17 (4th Cir. 1997), the Fourth Circuit rejected the application of res judicata in similar circumstances. The Court held:

> Finally, [the defendant] asserts reversal is required because the bankruptcy court erroneously referred to "res judicata" in its oral ruling instead of collateral estoppel. The bankruptcy court did mention the wrong legal doctrine. Res judicata prohibits relitigation of an identical legal claim. See *Keith v. Aldridge*, 900 F.2d 736, 739 (4th Cir.1990). Collateral estoppel, by contrast, bars relitigation of the same issue. See *Raynor*, 922 F.2d at 1149. [The plaintiff's] claim in the bankruptcy court—that [the defendant's] debt to him is nondischargeable—is certainly different from [the plaintiff's] claim in state court—that [the defendant] defrauded [the plaintiff] and breached fiduciary duties owed to [the plaintiff]. Thus the correct preclusion principle in this case is collateral estoppel, and not res judicata.

113 F.3d at 23.

The Court finds that the claims at issue in the District Court litigation did not encompass whether or not the debt was dischargeable. The claims are different. Res judicata, therefore, does not apply under these circumstances.

**IV.     The Judgment is Entitled to Collateral Estoppel.**

The Plaintiffs argue in the alternative that the District Court judgment is entitled to collateral estoppel in this Court. The Court agrees. Collateral estoppel applies in bankruptcy cases. *Grogan v. Garner*, 498 U.S. 279, 285 (1991). The Plaintiff bears the burden of proof by a preponderance of the evidence. *Id*., at 291.

The preclusive effect of a federal court judgment is determined by federal common law. *Taylor v. Sturgell,* 553 U.S. 880, 891 (2008); *Semtek Int'l, Inc. v. Lockheed Martin Corp*., 531 U.S. 497, 507-508 (2001). Collateral estoppel, also known as issue preclusion, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001).

The Fourth Circuit has held that a party seeking to rely on collateral estoppel must establish:

> (1) that 'the issue sought to be precluded is identical to one previously litigated' ("element one"); (2) that the issue was actually determined in the prior proceeding ("element two"); (3) that the issue's determination was 'a critical and necessary part of the decision in the prior proceeding' ("element three"); (4) that the prior judgment is final and valid ("element four"); and (5) that the party against whom collateral estoppel is asserted 'had a full and fair opportunity to litigate the issue in the previous forum' ("element five").

*Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006); *Sedlack v. Braswell Servs. Grp., Inc.,* 134 F.3d 219, 224 (4th Cir.1998).

There isn't any serious argument that the second, third and fourth elements of collateral estoppel have been met in this case. The second element has been satisfied because the issue of willfulness and maliciousness was actually determined in the District Court action. The District Court specifically found that the Defendant's conduct was "'intentional, malicious, wanton and reckless.'" Dist. Ct. Op., p. 36. The District Court's determination that the Defendant's actions were willful and malicious also was a critical part of the decision in the prior proceeding, because it was necessary to the award of punitive damages in the case. *Id*. The third element is, therefore, satisfied. There is also no doubt that the District Court's judgment is a valid and final judgment, thereby satisfying the fourth element.

The Defendant raises two issues in response to the Motion for Summary Judgment: (a) whether the issues are the same for purposes of collateral estoppel; and (b) whether the Defendant had a full and fair opportunity to defend the case. Docket No. 45 (Objection to Motion for Summary Judgment). The Court will address both issues, below.

### A. Are the Issues the Same?

The issue sought to be precluded, that of willfulness and maliciousness under Bankruptcy Code Section 523(a)(6), is legally indistinguishable from the issues litigated in the District Court. The District Court specifically found that the Defendant's conduct was "'intentional, malicious, wanton and reckless.'" Dist. Ct. Op., p. 36. The Defendant argues that the District Court's use of the terms "intentional" and "malicious" was different from what was required under *Geiger* – an intent to cause the harm suffered by the Plaintiffs. Docket No. 45. The Court finds that the issues are the same.

In its Opinion, the District Court found that the Defendant supervised "indiscriminate attacks on areas populated by Isaaq clan members," of which the Plaintiffs were members. Dist. Ct. Op., p. 7. The Court rejects the notion that because the Defendant may not have intended to harm these specific Plaintiffs that this does not constitute an intent to cause harm within the meaning of *Geiger*. The fact that the attacks were indiscriminate made it a virtual certainty that innocent civilians would be harmed. Further, when the Plaintiffs were tortured, imprisoned and killed extrajudicially, the harm indisputably was directed at their persons.

It is not entirely clear whether the District Court's findings of liability and damages premised on command responsibility would be entitled to collateral estoppel for purposes of Section 523(a)(6). The Court does find, however, that the District Court's findings of liability and damages premised upon aiding and abetting liability are entitled to collateral estoppel. In *Aziz*, the Fourth Circuit held that in order to be liable for aiding and abetting liability under the ATS, "a defendant must provide substantial assistance *with the purpose of facilitating the alleged violation*." 658 F.3d at 401 (emphasis added). At the same time, the Fourth Circuit rejected the idea that one could be liable under the ATS for those "who *knowingly* (but not purposefully) aid

and abet a violation of international law." *Id*. (quoting *Talisman*, 582 F.3d, at 259 (emphasis in original)). The District Court made a specific finding as to the purposeful nature of the Defendant's conduct, when it found: "The well-pleaded allegations and uncontested evidence submitted at trial also sufficiently establish that Samantar 'substantial[ly] assist[ed]' his subordinates with 'the purpose of facilitating' the acts alleged in the second amended complaint. See *Aziz*, 658 F.3d at 401." Dist. Ct. Op., p. 32. The requirement of purposefulness, in addition to knowledge, for aiding and abetting liability under the ATS, satisfies the "intent to injure" standard enunciated by the Supreme Court in *Geiger* for purposes of Section 523(a)(6).

The District Court's finding that the Defendant's actions were "intentional, malicious, wanton and reckless" represents the same issue as the willful and malicious requirement under Section 523(a)(6) of the Code. The first element of collateral estoppel has been satisfied.

    *B.  Did the Defendant Have a Full and Fair Opportunity to Defend the Case?*

As a general rule, federal court default judgments do not meet the "actually litigated" requirement for collateral estoppel. The Courts have applied an exception, however, when a party actively participates in the litigation before the bankruptcy is filed. A statement of this principle can be found in the case of *In re O'Quinn*, as follows:

> courts in a majority of circuits recognize an exception to the 'actually litigated' requirement. If a party actively participates in litigation prior to the entry of a default judgment, a federal court can apply collateral estoppel and prevent that party from relitigating the issues decided by the judgment. *Docteroff*, 133 F.3d at 215; *Bush*, 62 F.3d at 1324–25; *Fed. Deposit Ins. Co. v. Daily (In re Daily)*, 47 F.3d 365, 368–69 (9th Cir.1995); *Gottheiner*, 703 F.2d at 1140; *Jordana*, 232 B.R. at 477–78; *Nestorio*, 250 B.R. at 56–57. These courts reason that when a party actually participated and had a full and fair opportunity to actually litigate the issues in the prior action, but engaged in obstructive conduct resulting in a default judgment, it would be inequitable to reward that conduct by giving the party another opportunity to litigate the same issue in a different forum. *Melnor, Inc. v. Corey (In re Corey)*, 394 B.R. 519, 527–28 (10th Cir.BAP2008).

401 B.R. 739, 733-734 (Bankr. M.D. N.C. 2009). Given the extensive history of the Defendant's participation in the District Court litigation in this case, and the appeals therefrom, the Court concludes that the Defendant actively participated in the litigation.[6]

In response to the Motion, the Defendants submitted an Affidavit from the Defendant's trial counsel, Mr. Drennan. Docket No. 45, Ex. 1. Mr. Drennan stated in his Affidavit:

> a critical consideration in Samantar's taking of a default in the Civil Litigation was his inability, as it were, to revamp his trial strategy around issues of dischargeability raised by the filing earlier that week of Samantar's bankruptcy case given the shortness of time and attendant lack of resources with which to do so.

*Id.*, ¶ 6. At the argument on this Motion, though, the Court inquired of the Defendant's counsel just how the defense's strategy might have changed in light of the bankruptcy filing. The Defendant's counsel candidly answered that he did not know – and, the Court notes, the hearing on the Plaintiffs' Motion for Summary Judgment in this action was conducted on August 18, 2015, three years and five months after the case went to trial in the District Court in February 2012. If the defense is not able to supply anything more specific than "we would have done something differently, but we're not sure what" more than three years after the trial was conducted, this Court must find that the Defendant has not raised a genuine issue in response to the Motion.

Similarly, Mr. Drennan stated in his Affidavit:

> as Samantar's counsel in the Civil Action, I know that a primary consideration in respect of his subject bankruptcy filing was that he could not meet the financial

---

[6] The Court is aware that Judge Mayer of this Court rejected reliance on the "active participation" exception in *In re Gilson*, 250 B.R. 226 (Bankr. E.D. Va. 2000) ("even though the sanction judgments will be given *res judicata* effect in other non-bankruptcy litigation, the effect of the *Daily* and *Bush* holdings is to enlarge the ambit of § 523 without a hearing on the merits of the § 523 complaint.") While Judge Mayer's opinion in Gilson is forceful, the Court finds that the extensive history of litigation in this case is very much unlike the Debtor's minimal participation in the litigation in *Gilson*, and more like the Debtor's extensive participation in the pre-trial proceedings in *Ansari*, discussed below.

15

>   requirements of defending himself at trial in the Civil Action, which had been set to commence on Tuesday 21 February 2012, most notably his inability even to supply the travel expenses to his expert witnesses to attend the subject then impending trial and testify at trial, and, concomitantly, the funds required to secure permission from the United States Government under what are commonly known the "Touhy Regulations" for each of Samantar's three experts . . .

Id., ¶ 4.

The Court notes here that in his Schedules filed under oath in his bankruptcy case, the Defendant listed only $220 in cash and $700 in clothing as assets. Case No. 12-11085-BFK, Docket No. 37, Schedule B. (The Chapter 7 Trustee filed a Report of No Distribution shortly thereafter, on April 3, 2012. *Id.*, at Docket No. 41). It is, therefore, hard to see how the Defendant's ability to defend the case was negatively impacted by his own bankruptcy filing – he would have been in the same financially difficult position had the bankruptcy not been filed.[7]

The simple fact of the matter is that the Defendant filed for bankruptcy on the Sunday before a trial was scheduled to begin on Tuesday (with Monday being a federal holiday), in the expectation that the trial would be stayed. The Defendant bet that this Court would not find cause to lift the automatic stay in order to allow the trial to proceed, and he bet wrong. This Court found ample cause to lift the automatic stay: (1) the Court lacked jurisdiction over personal injury and wrongful death claims (28 U.S.C. §§ 157(b)(2)(O) and (b)(5)); (2), this Court's inability to conduct a jury trial; (3) the harm to the Plaintiffs in not being able to proceed; and (4) the protection of the bankruptcy estate by not allowing any execution on the judgment until a further order of the Court. *See* Tr., 2/21/2012, Case No. 12-11085-BFK, Docket No. 17, pp. 22-25. The Defendant did not appeal the relief from stay order, nor did he move for a stay pending appeal.

---

[7] The Court can take judicial notice of documents filed with the Court. *See, e.g.*, *Witthohn v. Fed. Ins. Co.*, 164 Fed.Appx. 395, 397 (4th Cir. 2006); *In re Harmony Holdings, LLC*, 393 B.R. 409, 414 (Bankr. D.S.C. 2008).

Accepting that the Defendant was financially outmatched, the Court notes that the civil case had been pending since November 2004. The Defendant was represented by counsel since at least November 2010. Drennan Aff., ¶ 3. The Defendant had the benefit of discovery in the District Court. Post-petition, he had the benefit of a full appeal to the Supreme Court on his claim of FSIA immunity and an appeal to the Fourth Circuit on his claim of common law immunity, during both of which he was represented by counsel. He was represented by counsel on the morning of February 23, 2012, when he elected to default before the District Court.

Finally, the Court notes that this case is similar to the *Ansari* case, cited above. In *Ansari*, the Debtor litigated extensively before the State court and a court-appointed commissioner in chancery. *Ansari*, 113 F.3d 18. After finding that the defendant had engaged in extensive discovery abuses, the commissioner held him in default. *Id*. The commissioner then heard evidence on the plaintiff's damages and awarded a judgment to the plaintiff. *Id*. The Fourth Circuit, noting the extensive pre-trial proceedings to which Ansari was a party, held that the State court judgment was entitled to collateral estoppel effect in the bankruptcy court. *Id*., at 23. Although *Ansari* involved a State court judgment, the preclusive effect of which was governed by State law pursuant to 28 U.S.C. § 1738, the due process principal is the same. The Defendant in this case engaged in years of litigation in the District Court, the Fourth Circuit and the Supreme Court, before he elected to default on the morning of the trial. Given the long history of this case, the Court finds that the Defendant had a full and fair opportunity to litigate the matter. The fifth element of collateral estoppel has been satisfied.

**Conclusion**

The Plaintiffs' Motion for Summary Judgment will be granted. The Court will issue a separate order.

Date: Sep 22 2015  /s/ Brian F. Kenney
 Brian F. Kenney
Alexandria, Virginia United States Bankruptcy Judge

Entered on Docket: September 22, 2015

Copies to:

J. Robertson Clarke, Esquire
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Ave NW
Washington, DC 20008-1564
*Counsel for Plaintiffs*

Christopher S. Moffitt, Esquire
218 North Lee Street
3rd Floor
Alexandria, VA 22314
*Counsel for Defendant*

Joseph A. Guzinski, Esquire
Sean C. Day, Esquire
Office of the United States Trustee
115 S. Union Street, Room 210
Alexandria, VA 22314
*Counsel for U.S. Trustee*